|, Judge PATRICIA RIVET MURRAY.
This case involves an appeal by the plaintiffs from the trial court’s judgment denying the plaintiffs’ motion for summary judgment and granting the defendant’s motion for summary judgment. For the reasons that follow, the judgment is affirmed.

FACTS AND PROCEDURAL HISTORY

On July 29, 1997, eighty-year old Norris Randall, who was suffering from pneumonia and emphysema, was admitted to the intensive care unit (the “ICU”) of Chal-mette Medical Center, Inc. (the “Hospital”), where he remained until his death on August 8, 1997. Five days before he died, Mr. Randall was intubated and put on a *1130 ventilator because Ms condition had worsened.
On August 28, 1998, Mr. Randall’s widow, Gladys Randall, and their daughter, Darlene Kuhn[1], filed a petition for damages against the Hospital. The basis for their claim against the Hospital is that Darrell Caruso, who is Mr. and Mrs. Randall’s grandson and who is also Ms. Kuhn’s son, obtained from Mr. Randall a power of attorney pursuant to which Mr. Caruso depleted his grandparents’ savings accounts. The power of attorney allegedly was obtained | ¡while Mr. Randall was unable to speak because he was intubated and on a ventilator. He also was alleged to have been sedated when the power of attorney was obtained. The plaintiffs allege that the Hospital is liable for the damages caused by Mr. Caruso’s depletion of the savings accounts[2] on several grounds, including negligence, invasion of Mr. Randall’s right to privacy, and breach of contract.
On September 28, 2000, the Hospital filed a motion for summary judgment, arguing that it has no duty to safeguard the financial interests of its patients or their heirs or to protect its patients from “white collar” criminal acts of third parties. The plaintiffs filed an opposition to the Hospital’s motion and a cross motion for summary judgment. In their cross motion for summary judgment, the plaintiffs argued that the case is a negligence case and not a case based on liability for a “white collar crime”. The plaintiffs alleged, among other things, that the Hospital had breached its duty of care by allowing unreasonable intrusions on the patient to occur, by breaching an implied contract to protect its patients’ privacy rights, and by failing to exercise its obligations as an onerous mandatary to monitor Mr. Randall’s privacy.
On December 15, 2000. a hearing was held on both the plaintiffs’ and the Hospital’s motions for summary judgment. The trial court rendered judgment on January 22, 2001, denying the plaintiffs’ motion for summary judgment, granting the Hospital’s motion for summary judgment, and dismissing the plaintiffs’ claims against the Hospital with prejudice.
| aThe trial court issued Reasons for Judgment on January 22, 2001. The Reasons for Judgment provided as follows:
Plaintiffs’ lawsuit alleges negligence on the part of defendant, Chalmette Medical Center, Inc., for allowing the grandson of an intensive care patient to effect a financial transaction which resulted in the depletion of the patient’s bank account. It is alleged that the grandson, Mr. Caruso, came to the hospital and induced his grandfather, while under sedation, to sign a power of attorney.
Plaintiff has not identified any legal duty on the part of the hospital to either keep Mr. Caruso away or to safeguard the patient’s financial interests. Further, there is no evidence that the hospital breached a duty to the patient or these plaintiffs. In spite of being dis *1131 trustful of Mr. Caruso, the plaintiffs did not inform the hospital of their concerns nor did they request that Mr. Caruso be prohibited from visiting his grandfather. Accordingly, there was no reason for the hospital to suspect or to foresee that a family member would take advantage of one of their patients in this manner.
The duty owed by hospitals to maintain a reasonably safe level of care to their patients affords many protections. This duty, however, has never been broadened to encompass the duty to protect a patient’s financial interests from unscrupulous family members.
On March 30.2001, the plaintiffs perfected a devolutive appeal to this court. The plaintiffs are appealing the granting of the Hospital’s motion for summary judgment.

STANDARD OF REVIEW

In Pierre-Ancar v. Browne-McHardy Clinic, 2000-2410 (La.App. 4 Cir. 1/16/02), 807 So.2d 344, cert. denied, 2002-0509 (La.4/26/02), 814 So.2d 558, this court discussed the criteria to be used by an appellate court in reviewing a summary judgment, as follows:.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary [ ¿judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 775 So.2d 226, 230. Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966.
The initial burden of proof remains on the movant to show that no genuine issue of material fact exists. However, if the movant will not bear the burden of proof at trial, his burden on the motion requires him not to negate all essential elements of the plaintiffs claim, but rather to point out that’ there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966(C)(2); Fairbanks v. Tulane University, 98-1228 (La.App. 4 Cir. 3/31/99), 731 So.2d 983, 985.
After the movant has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment. La. C.C.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir 9/10/97), 699 So.2d 895, 897. When a motion for summary judgment is properly supported, the non-moving party may not rest on the mere allegations of his pleading, but his response, by affidavits or as otherwise provided by- law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326. Id. at 4-5 and at 347-48.
Because the plaintiffs are alleging that the Hospital is liable to them on the grounds of negligence, this court must consider whether the legal requirements for a finding of negligence are present in this case. In Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762, the Louisiana supreme court articulated the analysis, which is a duty risk analysis, to be made in determining whether to impose liability for negligence.
In Posecai the court stated:
*1132 Under this analysis the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection | Kafforded by the duty breached. Syrie v. Schilhab, 96-1027, p. 4-5 (La.5/20/97), 693 So.2d 1173, 1176-77; Berry v. State, 93-2748, p. 4 (La.5/23/94), 637 So.2d 412, 414. Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. LeJeune v. Union Pacific R.R., 97-1843, p. 6 (La.4/14/98), 712 So.2d 491, 494.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Meany v. Meany, 94-0251, p. 6 (La.7/5/94), 639 So.2d 229, 233. Whether a duty is owed is a question of law. Peterson v. Gibraltar Sav. & Loan, 98-1601, 98-1609, p. 7 (La.5/18/99), 733 So.2d 1198, 1204 ... In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. See Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991). The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant’s activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving.... Id. at 765-66 (citations omitted).

DISCUSSION

A. Was the Hospital negligent?
Under the four prong test used in the duty risk analysis, this court must determine (1) whether the plaintiffs can prove that the Hospital’s failure to keep Mr. Caruso from obtaining a power of attorney was the cause-in-fact of the plaintiffs’ losses; (2) whether the Hospital owed a duty of care to Mr. Randall or to the plaintiffs; (3) whether the Hospital breached any such duty: (4) and whether any duty breached by the Hospital caused the type of harm against which the duty was imposed to protect. All four of these determinations must be affirmative for this court to find that the Hospital was negligent.
The cause-in-fact of the plaintiffs’ losses was Mr. Caruso’s fraudulent action in depleting bank accounts owned by Mr. and Mrs. Randall. Absent some warning given to the Hospital that Mr. Caruso might try to misappropriate property of Mr. | sRandall, the Hospital had no way to foresee that the grandson might commit a criminal act off the hospital premises that would cause financial loss to the patient or his family.
The plaintiffs allege that Mr. Randall made a specific request to the Hospital staff that they not allow his grandson to disturb him. They also allege that Mr. Randall “specifically requested of the nursing staff that the ‘power of attorney’ not be signed and that the exact situation as occurred be prevented.” The record, however, does not support these allegations.
Ms. Bridget Readear, an ICU nurse at the hospital testified in deposition that, although Mr. Randall declined to sign a power of attorney, he did not ask that his visitors be restricted or advise he had a concern about his grandson.
Ms. Etta Gould, another ICU nurse, testified that Mr. Randall became upset during a family visit in which his belongings were being discussed. She noted that fact in the record as well as the fact that the visitor was asked to come back later. The record indicates that the visitor had no *1133 problem with this, and left, as requested, so that the patient could rest.
Although Mrs. Randall, who had raised Mr. Caruso, knew that he had always been in trouble for stealing, she admitted that she did not ask the Hospital to restrict Mr. Caruso’s access to her husband. She testified that she “just didn’t want him [Mr. Caruso] upsetting him”. She never asked anyone at the hospital to call her if Mr. Caruso came to visit Mr. Randall, because she “didn’t care if he went.”
We find, therefore, that the Hospital’s failure to keep Mr. Caruso from obtaining a power of attorney was not the cause-in-fact of the plaintiffs’ loss, and that the Hospital had no reason to monitor Mr. Caruso’s visits to Mr. Randall. The damages the plaintiffs suffered were in no way foreseeable by the Hospital.

\rjDid the Hospital owe a duty of care to Mr. Randall or the plaintiffs?

Clearly, the Hospital owed a duty of care to Mr. Randall. In Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974), the Louisiana Supreme Court explained the scope of a hospital’s duty as follows:
A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient’s condition may require. It is the hospital’s duty to protect a patient from danger that may result from the patient’s physical and mental incapacities as well as from external circumstances peculiarly within the hospital’s control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends on the facts of that case. Id. at 747.
Because we have determined that the actions that caused the plaintiffs damages were not foreseeable by the Hospital and that the Hospital was not responsible for the actions of Mr. Caruso, the Hospital did not breach the duty of care it owed to Mr. Randall or any duty that it might have owed to the plaintiffs with respect to their losses.
Further, although Hospital was required under the language of the Hunt case to protect Mr. Randall from “external circumstances peculiarly within the hospital’s control”, the circumstances that resulted in the plaintiffs’ losses were clearly not within the Hospital’s control at all, much less in the Hospital’s “peculiar” control. The actions causing damage to the plaintiffs were exclusively under Mr. Caruso’s control, and they took place well away from the Hospital premises.

Did the Hospital breach any duty it owed to Mr. Randall or the plaintiffs?

Based on the facts established by the record, the Hospital had no duty to prevent Mr. Caruso from obtaining a power of attorney from Mr. Randall, and did not breach any duty owed to Mr. Randall or the plaintiffs.

Did any duty breached by the Hospital cause the type of harm against which the duty was imposed to protect. ?

IsBecause plaintiffs have failed to establish a duty on the part of the hospital, the answer to this question is no.
The plaintiffs have presented no evidence that would support a finding of negligence on the part of the Hospital for failing to prevent Mr. Caruso from obtaining a power of attorney from Mr. Randall.
B. Are the plaintiffs entitled to recover damages from the Hospital on any grounds other than negligence?
In addition to claiming that the Hospital was negligent, the plaintiffs also claim that the Hospital is liable to them on the grounds that the Hospital breached an implied contract to protect its patients’ privacy rights and failed to exercise its obligations as an onerous mandatary to monitor Mr. Randall’s privacy. This *1134 court finds no merit in either of these claims. The plaintiffs base these claims on the Policy contained in the Hospital’s Nursing Service Operational Manual concerning visitation and restrictions in the ICU and on the Patient Rights section of the Policies and Procedures of the Hospital.
The plaintiffs argue that because the visitation policy states that “[vjisiting in the unit will be limited to two visitors for each patient” at the designated times of day, the Hospital breached a contract with Mr. Randall when it permitted more than two persons to visit Mr. Randall for the purpose of having a power of attorney executed.
We disagree. The visitation policy is a policy of the Hospital contained in an internal operating manual. It does not constitute an implied contract between Mr. Randall for his benefit or for the benefit of the plaintiffs. Therefore, the Hospital has no liability to Mr. Randall or the plaintiffs based on the visitation policy.
9 Nor does the Hospital’s policy on patient rights create a duty owed by the Hospital to Mr. Randall or the plaintiffs. This policy provides, in pertinent part, that the patient has the right to refuse to talk with or see a visitor. The plaintiffs argue that Mr. Randall’s right to privacy was violated by the Hospital when it allowed more than two visitors to visit Mr. Randall. In no way did the policy on patient privacy rights obligate the Hospital to monitor Mr. Randall’s visitors. He had the right to refuse to talk with or see Mr. Caruso. On the one occasion that Mr. Randall apparently requested that Mr. Caruso’s visit be terminated, the Hospital honored that request. There is absolutely no evidence Mr. Randall requested that Mr. Caruso be permanently prohibited from visiting him. Mrs. Randall specifically stated that she did not mind Mr. Caruso visiting her husband. She testified that she simply did not want her husband to be upset by Mr. Caruso, but admitted that she did not communicate even this concern to the Hospital.

CONCLUSION

The trial court correctly determined that the Hospital was entitled to judgment as a matter of law, the summary judgment dismissing, with prejudice, the plaintiffs’ claim against it is affirmed.
AFFIRMED.

. Darlene Kuhn was mistakenly referred to as Gladys Kuhn in the petition.

. In a previous action entitled, "Gladys Wil-tenmuth Randall, Individually and as Provisional Administratrix of the Estate of Norris Randall versus Darrell Caruso”, 34th Judicial District Court for the Parish of St. Bernard, No. 82-862, Mrs. Randall sought reimbursement from Mr. Caruso of the money he allegedly obtained from Mr. and Mrs. Randall's bank accounts through the use of the power of attorney obtained during Mr. Randall's hospitalization. In a consent judgment. Mr. Caruso agreed to pay a total of $37,000. The plaintiffs are now seeking further reimbursement as well as attorneys fees and costs expended to collect the money obtained by Mr. Caruso.