846 So.2d 93 (2003)
Leslie Lewinter, Wife of/and Robert M. SUSKIND, M.D.,
v.
Denese SHERVINGTON, M.D.
No. 2003-C-0037.
Court of Appeal of Louisiana, Fourth Circuit.
April 16, 2003.
*94 Timothy G. Schafer, Valerie M. Briggs, Schafer & Schafer, New Orleans, LA, for Plaintiffs/Respondents, Leslie Lewinter and Dr. Robert Suskind.
Marie A. Bookman, New Orleans, LA, for Defendant/Relator, Denese Shervington, M.D.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge TERRI F. LOVE, Judge LEON A. CANNIZZARO JR.).
CANNIZZARO, Judge.
Denese Shervington, M.D. ("Dr. Shervington"), the relator, seeks supervisory review of the trial court's decision granting summary judgment in favor of Robert M. Suskind, M.D. ("Dr.Suskind") and his wife, Leslie LeWinter (the "Suskinds").

FACTS AND PROCEDURAL HISTORY
On May 18, 2000, Dr. Shervington and the Suskinds signed a ReMax printed form of Agreement to Purchase and Sell (the "Agreement"), pursuant to which the Suskinds agreed to sell, and Dr. Shervington agreed to purchase, the Suskinds' property located at 19 Park Island, New Orleans, Louisiana. The Agreement contained the following provision:

OPEN PREDICATION CLAUSE This sale is predicated on the sale of PURCHASER'S property at 5352 Bancroft. This predication shall continue for 14 days following acceptance of this offer. If PURCHASER'S property has not gone to Act of Sale, or this predication is not removed within the above stated period, this Agreement to Purchase becomes null and void, and PURCHASER'S deposit shall be returned in full. During the above stated period, SELLER has the right to continue to show and offer the property to prospective purchasers. If SELLER receives another acceptable offer, he shall so notify PURCHASER, and participating Agents in writing. PURCHASER shall have 72 hours, from timed receipt of such notification, to either remove this predication, in writing to SELLER'S DESIGNATED AGENT, or to release, in writing all rights under the agreement and to have his deposit returned to him. If this predication is removed by PURCHASER, all financing contingencies of this Agreement to Purchaser are automatically removed, and all other terms and conditions of the Agreement shall remain in full force and effect. PURCHASER and SELLER agree that PURCHASER'S failure to remove this predication, in writing to SELLER'S DESIGNATED AGENT, within the time stipulated following notification, shall render this Agreement to Purchase null and void, and all parties agree to execute a release of this Agreement and authorize the return of deposit in full. (Emphasis supplied.)
Under the terms of the predication clause quoted above, the Agreement would become "null and void" unless one or both of two events occurred on or before June 1, 2000, which was fourteen days after the date the Agreement was executed. Either the predication clause had to be removed from the Agreement or Dr. Shervington's property at 5352 Bancroft Street had to be sold. The predication clause was not removed on or before June 1, 2000, and Dr.
*95 Shervington's property had not sold by that date.
On June 5, 2000, Dr. Shervington executed a ReMax printed form of Removal of Predication. This form read as follows:
It is hereby agreed and understood by the parties hereto that the predication as stated in the contract dated May 18, 2000 for the purchase of 19 Park Island is no longer a consideration.
All other terms and conditions of the agreement to remain in full force and effect.
The Removal of Predication was signed by Dr. Shervington but was never signed by the Suskinds.
On July 26, 2000, Dr. Shervington submitted to the Suskinds a ReMax printed form of an Extension of Loan Approval and/or Act of Sale (the "Extension"). The form referenced the "AGREEMENT TO PURCHASE OR SELL DATED: May 18, 2000" and included the property address "# 19 Park Island". The form provided that "[i]t is hereby understood and agreed that concerning the above referenced agreement to purchase or sell that we have extended the time for obtaining loan approval to Aug. 21, 2000 and the time for passing of the Act of Sale to Sept. 1, 2000". On July 26, 2000, Dr. Suskind revised the Extension to delete the reference to obtaining loan approval and to add a provision pursuant to which Dr. Shervington would agree to reimburse the Suskinds $3,500.00 (or a prorated amount if the act of sale occurred before September 1, 2000) in consideration of the Suskinds' execution of the Extension. Dr. Shervington refused to sign the Extension as modified by Dr. Suskind.
On July 31, 2000, the date that the Agreement specified for the passing of the act of sale, the Suskinds appeared before a notary public to execute a process verbal. In the process verbal the notary recited that the Suskinds and Dr. Shervington appeared at his office on July 31, 2000, but that Dr. Shervington refused to sign the act of sale and pay the purchase price as required by the Agreement. The notary public protested Dr. Shervington's failure to purchase the property and pay the purchase price.
On May 17, 2001, the Suskinds filed a Petition for Breach of Contract seeking damages from Dr. Shervington for the losses that they alleged that they sustained because Dr. Shervington refused to purchase their property pursuant to the Agreement. Dr. Shervington filed an Answer & Reconventional Demand and Third Party Demand on June 1, 2001. Dr. Shervington sued the Suskinds in reconvention for the return of her deposit and for other damages, and she brought a third party demand against Latter & Blum, Inc. for the return of her deposit and for other damages.
On July 26, 2002, the Suskinds filed a Motion for Partial Summary Judgment requesting that the trial court grant summary judgment in their favor on the issue of liability. On October 10, 2002, Dr. Shervington filled a Motion for Summary Judgment seeking the return of her deposit. The motions for summary judgment were both heard on December 6, 2002. On December 11, 2002, the trial court rendered a Judgment in which the court granted the Suskinds' Motion for Partial Summary Judgment and denied Dr. Shervington's Motion for Summary Judgment.
Dr. Shervington has now applied for writs with this Court. We grant the supervisory writ that has been requested.

STANDARD OF REVIEW AND APPLICABLE LAW
Standard of Review
In Independent Fire Insurance. Co. v. Sunbeam Corp., 99-2181 and 99-2257 *96 (La.2/29/00), 755 So.2d 226, the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:
Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows: The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). Id. at p. 7 and at 230-31.
See also Austin v. Abney Mills, Inc., XXXX-XXXX (La.9/04/02), 824 So.2d 1137; Randall v. Chalmette Medical Center, Inc., XXXX-XXXX (La.App. 4 Cir. 5/22/02), 819 So.2d 1129; Pierre-Ancar v. Browne-McHardy Clinic, 2000-2409 and 2000-2410 (La.App. 4 Cir. 1/16/02), 807 So.2d 344, writ denied, XXXX-XXXX (La.4/26/02), 814 So.2d 558.
Applicable Law
The law applicable to the instant case consists of basic Louisiana Civil Code articles on obligations. La. Civil Code art. 2046 provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent".
La. Civil Code art. 1767 states the law regarding conditional obligations. That article provides as follows:
A conditional obligation is one dependent on an uncertain event.
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.
La. Civil Code art.1927 provides that "[a] contract is formed by the consent of the parties through offer and acceptance". La. Civil Code art.1943 provides that "[a]n acceptance not in accordance with the terms of the offer is deemed to be a counteroffer".

DISCUSSION
In Campbell v. Melton, 2001-2578 (La.5/14/02), 817 So.2d 69, the Louisiana Supreme Court considered the following provision in an agreement for the purchase and sale of a house: "any single mechanical item repair that exceeds $2000.00 the Seller has the option to repair or the contract will be null and void". Id. at p. 2 and at 72. The Court found that this clause in the purchase agreement was a resolutory condition. The Court stated as follows:
"When viewed as a resolutory condition, the clause clearly states that the contract would terminate upon the happening of a condition, namely the discovery of a mechanical item that exceeded $2,000 to repair.... Rather, a plain reading of the unambiguous clause reveals *97 that once the condition was fulfilled, the contract became null and void unless Melton opted to make the repairs." Id. at p. 8 and at 76.
The Court found that the clause terminated the contract automatically once the resolutory condition was proven.
In the instant case, the predication clause was a resolutory condition contained in the Agreement. The predication clause specifically stated that the predication would continue for fourteen days following acceptance of the offer to purchase. The clause stated that if Dr. Shervington's property had not gone to an act of sale or if the predication were not removed with the fourteen day period, the Agreement "becomes null and void, and Purchaser's deposit shall be returned in full". It is undisputed that on June 1, 2000, Dr. Shervington's property had not been sold. It is also undisputed that the predication clause in the Agreement had not been removed by that date. Therefore, under the express terms of the Agreement, the Agreement automatically became null and void, and Dr. Shervington's deposit should have been returned to her.
The Suskinds, however, contend that when Dr. Shervington signed the Removal of Predication, which provided that "[a]ll other terms and conditions of the agreement to remain in full force and effect", the Agreement, which had already become null and void pursuant to its terms, was revived. We do not agree.
Although the Agreement could not be revived, Dr. Shervington could make a new offer to purchase the Suskinds' home that incorporated the Agreement's provisions by the reference. This Court finds that the Removal of Predication was an offer made to the Suskinds that was never accepted and that the Extension was a modification by Dr. Shervington of the offer contained in the Removal of Predication. By changing the terms of the Extension, Dr. Suskind made a counteroffer to Dr. Suskind but did not accept the offer contained in the Removal of Predication. In order for the Removal of Predication, as modified by the Extension, to become a completed contract, the Suskinds had to agree to the terms of the Removal of Predication, as modified. They did not do this. Dr. Suskind executed a counteroffer, but there was never an acceptance by the Suskinds of the offer contained in the Removal of Predication or of the offer as modified by the Extension. For a contract to be completed there must be an offer and an acceptance. La. Civil Code art. 1927. Because the offer contained in the Removal of Predication, as modified by the Extension, was not accepted by the Suskinds, once the Agreement became null and void, there was never a completed contract between Dr. Shervington and the Suskinds.
The Suskinds mistakenly rely on the case of Latter and Blum, Inc. v. Nodier, 442 So.2d 854 (La.App. 4 Cir.1983), to support their position. In that case, however, this Court did not find a resolutory condition in the original listing agreement, and this Court found that the extension agreements were not only intended to be valid contracts by the parties but were also agreed to by all the parties. Therefore, the extension agreements were valid contracts based on the principal of offer and acceptance.

CONCLUSION
The Agreement became null and void on June 1, 2000, because the predication clause had not been removed from the Agreement by that date, and Dr. Shervington's property that was the subject of the predication clause had not been sold by that date. The subsequent documents *98 that were executed never reached the level of a contract, because the requisite offer and acceptance were missing. Under the terms of the Agreement, when the Agreement became null and void, Dr. Shervington was entitled to the return of her deposit.
Therefore, this Court vacates the Judgment rendered by the trial court on December 11, 2002, renders judgment in favor of Dr. Shervington on her Motion for Summary Judgment, and orders the return of Dr. Shervington's deposit to her together with legal interest from the date of judicial demand until paid.
WRIT GRANTED, TRIAL COURT JUDGMENT VACATED, AND JUDGMENT RENDERED.