PAUL A. BONIN, Judge.
_JjSchwegmann Family Trust No. 2 filed suit against White III, LLC in order to obtain a judicial declaration that a building restriction which prohibited the operation of a grocery store on the Trust’s property had terminated. White is the owner of the property benefitted by the restriction and has the exclusive right to enforce the restriction.[1] Arguing that there are no genuine issues of material fact, the Trust filed *1230 a motion for summary judgment. The trial judge denied the motion, and the Trust sought supervisory relief. We directed that the entire record be filed in this court and that the parties brief and orally argue the matter.
The Trust argues that the building restriction in question is effective only “[s]o long as a supermarket is operated” on White’s property and that because White has not operated a supermarket for the last six years, the building restriction should be declared terminated. White argues that it has been operating a supermarket and, additionally, its right to prevent other lots from operating grocery stores can be taken away only by a unanimous vote of all lot owners.
12After de novo review, we find that the provision regarding the termination of the questioned building restriction, which is conditioned upon the happening of an uncertain event, is unambiguous and that there is no genuine issue of material fact that the uncertain event has happened. Accordingly, we grant the writ,[2] reverse the denial of summary judgment, and render judgment declaring the particular building restriction in question terminated and unenforceable.
We explain our decision in greater detail in the following Parts.
I
In this Part, we explain the pertinent factual history of the case.
In 1994 Schwegmann Giant Super Markets, a partnership, created the Schweg-mann Plaza Shopping Center through a juridical act entitled “Act of Establishment of Predial Servitudes and Building Restrictions” on property it owned in New Orleans East. The partnership established building restrictions and servitudes on the different parcels in the shopping center according to a general plan for the benefit of all lots in the shopping center. For example, only a lot on an outer parcel may operate a gas station, no air conditioning units may be visible from the public roadways, no buildings may exceed twenty-five feet in height, and lot owners are required to ensure that the common areas remain clean and in good repair.
One of the building restrictions established a “Supermarket Parcel” and gave that lot an exclusive right to operate a grocery store in the shopping center. The general plan, however, conditioned the exclusivity of the right on the following | «¡provision: “So long as a supermarket is operated on the Supermarket Parcel, none of the other Parcels shall be improved or used, in whole or in part, for the conduct of a grocery store or supermarket ...” Initially, the partnership or its affiliate operated a supermarket on that parcel. Now the Supermarket Parcel is owned by White who is, in the phraseology of the Act, the Supermarket Owner.
Hurricane Katrina struck New Orleans in 2005 and devastated the shopping center. At the time, White was leasing the Supermarket Parcel to a supermarket chain, which was operating a grocery store on the lot. The chain, however, ceased operating a grocery store on the Supermarket Parcel after the storm’s devastation. Although the store remained vacant, the chain continued to pay rent to White until the bankruptcy court terminated its *1231 lease with White in January 2011. It is undisputed that no food or food products have been sold at the Supermarket Parcel since the storm in 2005.
The Trust’s lot, which is the former site of an electronics store, is also vacant because its tenant, too, went bankrupt. The Trust hopes to operate a grocery store on this parcel. The Trust received an offer from another grocery store chain to lease the Trust’s lot and operate a grocery store. But a title inspection on the Trust’s lot revealed the existence of the building restriction presently in dispute, and the potential lessee refused to lease the lot without assurance that the building restriction had been lifted.
In April of 2010, while White was still receiving rent from the supermarket chain, the Trust sent White a letter asking White to acknowledge that the building restriction had terminated. White rejected the request and replied that it believed [4the building restriction in question was still operative because White had been continually leasing the premises to a supermarket company, and, further, White believed that a grocery store would soon reopen there.
In October of 2010, the month before White’s lessee filed for bankruptcy, the Trust filed a petition for declaratory action to have the building restriction declared terminated and unenforceable. If a declaration that the specific building restriction is terminated and unenforceable, any of the parcels or lots in the shopping center, including the Trust’s and White’s, may operate a grocery store.
In February of 2011, the Trust filed a motion for summary judgment, which the trial court denied. The denial of a summary judgment is an interlocutory judgment. La. C.C.P. Art. 968. The Trust timely sought supervisory relief in this court. See La. C.C.P. Art. 2201; Rule 4-8, Uniform Rules-Courts of Appeal.
II
In this Part we address first the general legal precepts which govern our consideration of this dispute and then apply those precepts to the specifies of the general plan’s particular building restriction in question and the plan’s provision for its termination.
A
“Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements.” La. Civil Code Art. 775. “Building restrictions may be established only by juridical act executed by the owner of an immovable or by all the owners of the affected immovable.” La. Civil Code Art. 776. Here, the Schwegmann partnership established the general plan through an Act, which it recorded in the records of Orleans Parish. There is also no dispute that the general |fiplan satisfies the legal requirement that it “must be feasible and capable of being preserved.” La. Civil Code Art. 775. Thus, the building restrictions are valid and enforceable.
Building restrictions, once established are terminated as provided by Title V of Book II of the Civil Code.[3] See La. Civil Code Art. 776. Title V provides inter alia that building restrictions “may terminate or be terminated, as provided in the act that establishes them.” La. Civil Code Art. 780.
“Apart from the rule of strict interpretation, documents establishing building restrictions are subject to the general rules of the Louisiana Civil Code of 1870 *1232 governing the interpretation of juridical acts. Words used are to be understood in the common and usual signification.” La. Civil Code Art. 783 Cmt. (c). See also, generally, La. Civil Code Arts. 2045-2057. As the general plan is the private law of the parties, when the words of the general plan “are clear and explicit and lead to no absurd consequences, no further search may be made in search of the parties’ intent.” See La. Civil Code Art. 2046. If the questioned provision regarding termination of the building restriction is unambiguous, then its interpretation is a question of law and not of fact. See New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey, 09-1433, p. 9 (La.App. 4 Cir. 5/26/10), 40 So.3d 394, 401.
With these general legal precepts before us, we turn to a consideration of the specific building restriction in question and the Act’s provision for its conventional termination.
IrB
The three parts of Section 10 of the Act establish the use restrictions on the shopping center. Section 10.1 creates the building restriction in dispute and contains the questioned conditional phrase, “[s]o long as,” limiting the duration of the building restriction; the phrase applies only to the building restriction benefitting the Supermarket Parcel. Section 10.2 imposes further use restrictions generally affecting owners of all lots, including the Supermarket Parcel; the use restrictions in 10.2 prohibit the lot owners from operating or allowing the operation of post offices, amusement parks, veterinary clinics, banquet halls, hotels, and various other businesses, none of which pertain to our inquiry. Section 10.3 states that the “use restrictions in this Article 10 shall constitute building restrictions in accordance with Louisiana Civil Code Articles 775-783 for the benefit of each other Parcel” and explains how the restrictions imposed by Section 10 may in general be amended, terminated, or enforced.
The pertinent wording of the disputed section is as follows:
10.1 So long as a supermarket is operated on the Supermarket Parcel, none of the other Parcels shall be improved or used, in whole or in part, for the conduct of a grocery store or supermarket, which is hereby defined as any establishment from which food or food related products are sold, excluding (a) restaurants ... and (ii)[sie] any establishment from which the sale of food or food related products occurs as an insignificant or insubstantial incident to the conduct of another business.
As we intimated in the introduction, the Trust argues that Section 10.1 controls the termination and enforceability of the restriction and White principally relies upon the provisions of Section 10.3, which it argues is the exclusive means by which the building restriction terminates. See discussion in Part III, post.
|7The provision that “[s]o long as a supermarket is operated on the Supermarket Parcel, none of the other Parcels shall be improved or used, in whole or in part, for the conduct of a grocery store or supermarket,” we find, is unambiguous. The building restriction on the operation of a supermarket by any other Parcel is clear, but it is also conditional. Thus, the obligation of the Trust, or any other parcel owner, not to operate a supermarket in the shopping center is a conditional obligation. “A conditional obligation is one dependent on an uncertain event.” La. Civil Code Art. 1767. A conditional obligation may be suspensive or resolutory. “If the obligation may not be enforced until the uncertain event occurs, the condition is sus-pensive.” Id. “If the obligation may be *1233 immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.” Id.
Here, the obligation not to operate a supermarket preceded the occurrence of the “uncertain event.” The occurrence of the uncertain event frees the other parcels in the shopping center, including of course the Trust’s parcel, from the restriction on operating a supermarket or grocery store.
The factual question, then, is whether the uncertain event has occurred. The restriction is effective “[s]o long as a supermarket is operated on the Supermarket Parcel.” Although the word “operated” is undefined in the Act, we are to give words “their generally prevailing meaning.” La. Civil Code Art. 2047. The Act does, however, define “grocery store or supermarket” as “any establishment from which food or food related products are sold” and exempts from its definition restaurants as well as other establishments in which the sale of food is “an insignificant or insubstantial incident to the conduct of another business.” In the context of the Act and of the general plan, the “generally prevailing meaning” is |sthe meaning that best conforms to the object of the Act. And we find that the sense of operating a supermarket or grocery store means managing, conducting, or carrying on any establishment (other than a restaurant) from which the sale of food or food related products is a significant or substantial part of the business. See La. Civil Code ART. 2048.
And on this point it is clear that White has offered no factual support that it has conducted or operated any such food establishment on the Supermarket Parcel since the storm. Thus, the Trust’s evidence is undisputed. Because there is no factual dispute that the uncertain event, that is the discontinuance of the operation of a supermarket or grocery store on the Supermarket Parcel, has occurred, we necessarily conclude the restriction set forth in Section 10.1 is terminated as provided for in the Act itself.
The Trust, therefore, is entitled to a declaration of the termination and unen-forceability of the restriction regarding operating a supermarket or grocery store on any other parcel in the shopping center.[4]
Ill
In this Part we explain why we reject White’s argument that termination of the restriction can only occur through application of the provisions of Section 10.3 of the Act.
In White’s supplemental brief it argues that “the statutory scheme for termination of building restrictions ONLY applies if the restriction itself fails to provide a mode for termination on its own” (emphasis in original). White cites | ^Section 10.3 as the pertinent section dealing with the termination of the building restriction:
10.3 The use restrictions in this Article 10 shall constitute building restrictions in accordance with Louisiana Civil Code Articles 775-783 for the benefit of each other Parcel. The use restrictions established in Section 10.1 may be amended or terminated at any time by an instrument in writing and recordable form executed by the Supermarket Owner. The use restrictions established in Section 10.2 may be amended or terminated at any time by an instrument in writing executed by the Owners of all *1234 Parcels. The use restrictions established in Section 10.1 may be enforced only by the Supermarket Owner, and the use restrictions established in Section 10.2 may be enforced by any Owner, [emphasis added]
The argument is that because White, as the Supermarket Owner, has the exclusive ability to terminate the building restriction, the Act contemplates how and when the building restriction terminates; therefore, the court need not look to the Civil Code. White is correct in that Civil Code states, “Building restrictions may be amended ... or may terminate or be terminated[ ] as provided in the act that establishes them.” La. Civil Code Art. 780. And the Civil Code only provides additional methods by which a property owner may terminate building restrictions “[i]n the absence of such provision.” Id.; see also Diefenthal v. Longue Vue Foundation, 02-1470, p. 32 (La.App. 4 Cir. 1/7/04), 865 So.2d 863, 882-883 writ denied 04-0366 (La.4/2/04), 869 So.2d 883.
White is correct in his assertion that the building restriction terminates according to terms in the Act. But White is incorrect in his presumption that 10.3 is the only manner by which the restriction may terminate. Section 10.1, the section creating the building restriction, governs the duration of the building restriction. The common understanding of what it means to sell food or food | inrelated products, the definition in the Act, has not been met since the storm in 2005. And White certainly cannot claim to have operated a grocery store after its grocery store lease was canceled; therefore, the restriction is currently not effective.
White argues that its lease to a supermarket company was sufficient to constitute the operation of a grocery store even though the actual building remained vacant. We find this argument without merit in light of the Act’s stated definition of “grocery store or supermarket” as explained in Part II, ante. White further argued that it was “actively trying to lease” the lot to another supermarket chain. White amends this argument in its supplemental brief to state that although its original supermarket lessee has left, it has found another potential supermarket lessee and has committed to spending its own money to improve the site, and expects to receive grant money from the City of New Orleans. Although White clearly seems to have expended money and effort searching for a new lessee, the lot has been vacant for far longer than any reasonable delay would allow.
Another of White’s arguments is that because of the lease with the supermarket chain, White was unable to lease the Supermarket Parcel to another supermarket company, so the obligation to operate a grocery store should be suspended until the time the lease was canceled. By White’s own assertion, the building restriction granting White the exclusive right to operate a grocery store was to benefit the shopping center as a whole. And interpreting the Act as implementing a general plan that is also feasible, it would be unreasonable to assume the Act intended to prevent other lots from opening an anchor store after the original anchor has abandoned the shopping center. See La. Civil Code Art. 775. Allowing the lot that is expected to house the anchor business in the shopping [^center to be vacant for years would certainly hurt the other businesses in the shopping center, thus not benefitting each other lot as contemplated in Section 10.3.
White further argues that the building restriction has not prescribed or been abandoned. White has not violated the building restriction through a contrary use such as any of the uses described in Sec *1235 tion 10.2. See La. Civil Code Art. 781. If White had, for example, operated a post office, then the other lot owners could not prevent him from the continued operation of that post office. There has also been no abandonment of the general plan as contemplated in Civil Code Article -782 as would have occurred had multiple other lots already opened grocery stores and had not been stopped so as to constitute an abandonment of the plan as a whole. We agree with White on these matters because the Act does not impose an affirmative duty on the Supermarket Parcel to operate a grocery store; rather, White’s ability to prevent other lots from operating grocery stores is contingent on White’s continued operation of one. This case turns on whether the building restriction terminates according to the terms in the Act; therefore, these arguments are unpersuasive.
IV
In this Part we address the standard of review which we have employed in considering the trial court’s denial of a summary judgment in a declaratory action proceeding.
The standard of review for a motion for summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 755 So.2d 226, 228 (La.2000); Warner v. Alex Enterprises, Inc., 08-0929, p. 3 (La.App. 4 Cir. 1/28/09), 4 So.3d 922, 924. We afford no deference to the trial judge’s conclusions about whether |12there are genuine issues of material fact. See La. C.C.P. Art. 966 B. Because we review the trial court’s ruling de novo, we use the same standard as the trial court, which is that summary judgment is appropriate, and indeed favored, when there is no issue of material fact. See La. C.C.P. Art. 966 A(2) and B. Thus, we determine the same issues as does the trial court: “whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.” Hood v. Cotter, 08-0215, p. 8 (La.12/2/08), 5 So.3d 819, 825.
White, as the adverse party to a motion for summary judgment, must show a disputed material fact and cannot rest on the mere denial of its allegations. La. C.C.P. Art. 967. A “genuine issue” is a “triable issue.” Jones v. Estate of Santiago, 03-1424, p. 6 (La.4/14/04), 870 So.2d 1002, 1006. The parties do not dispute any issues of fact that would require the weighing of evidence.
The purpose of a declaratory judgment is to provide a method whereby parties may request a trial judge to “declare rights, status, and other legal relations whether or not further relief is or could be claimed.” La. C.C.P. Art. 1871. The articles on declaratory judgments are remedial and should “be liberally construed and administered.” La. C.C.P. Art. 1881. A party is entitled to relief by declaratory judgment when its rights are uncertain or disputed in an immediate and genuine situation, and the declaratory judgment will remove the uncertainty or terminate the dispute. See Duplantis v. Louisiana Board of Ethics, 00-1750, pp. 11-12 (La.3/23/01), 782 So.2d 582, 599. A function of a declaratory judgment is simply to establish the rights of the parties. See Williams v. City of Baton Rouge, 02-0339 (La.App. 1 Cir. 2/14/03), 848 So.2d 9. Declaratory judgments promote the simple, expedient trial of cases involving questions readily lending themselves to trial without the usual formalities, making speedy resolution of the issues | ^possible. See Couvillion v. James Pest Control, Inc., 98-2382 (La.App. 4 Cir. 3/3/99), 729 So.2d 172.
Trial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief. See Louisiana Supreme Court Committee on *1236 Bar Admissions ex rel. Webb v. Roberts, 00-2517 (La.2/21/01), 779 So.2d 726. For a declaratory judgment to be granted there must be a justiciable controversy, as courts are not permitted to issue advisory opinions based on a contingency which may or may not occur. See Couvillion, supra. The jurisprudence further provides that courts should not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. See St. Charles Parish School Board v. GAF Corp., 512 So.2d 1165, 1170 (La.1987) (on rehearing).
Here, there is a justiciable controversy. The respective rights of the Trust and of White under the general plan have been uncertain and a judicial declaration of their rights is appropriate. Because the Act establishing the building restriction and providing for its termination is unambiguous, we apply its provisions as a matter of law. See Blessey v. McHugh, 94-0555 (La. App. 1 Cir. 7/27/95), 664 So.2d 115, 121. And because there is no genuine issue of material fact about whether White as Supermarket Owner was operating a supermarket or grocery store on the Supermarket Parcel, we find as a matter of law that the Trust is entitled to a declaratory judgment.
DECREE
We hereby grant the application of Schwegmann Family Trust No. 2 for supervisory relief, reverse the interlocutory trial court judgment rendered on April 8th, 2011, and render judgment.
| ]4Accordingly, there is hereby judgment in favor of Schwegmann Family Trust No. 2 and against White III, LLC, declaring that the building restriction set forth in Section 10.1 of the juridical act entitled “Act of Establishment of Predial Servi-tudes and Building Restrictions” by Schwegmann Giant Super Markets, a partnership, dated May 19th, 1994 before Angela J. Crowder, Notary Public, and recorded at NA # 94-25081, records of Orleans Parish, is forever terminated and unenforceable, and that all parcels or lots covered by the general plan thereof, including the Trust’s parcel, are forever free of the said building restriction which bene-fitted White’s Supermarket Parcel.[5]
All costs are taxed to White. See La. C.C.P. Art. 2164.
WRIT GRANTED; JUDGMENT REVERSED AND RENDERED
APPENDIX A
| ^Description of Schwegmann Family Trust No. 2’s former Circuit City lot: LOT 3DhI-2
A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon and all the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining, situated in the State of Louisiana, Parish of Orleans, City of New Orleans, Third District in that part known as Lakratt Tract, designated as Lot 3D-4-2 bounded by Interstate Highway 10, Bullard Avenue, Levy (formerly Eastover Boulevard) Drive and the Jahncke Canal and is more fully described as follows:
COMMENCING at the intersection of the projected easterly right-of-way line of Bul-lard Avenue and the projected northerly right-of-way line of Levy (formerly East-over Boulevard) Drive;
*1237 THENCE, go along the aforesaid projected easterly right-of-way line, North 36 degrees 27 minutes 35 seconds West, a distance of 23.00 feet to a point;
THENCE, go along the aforesaid easterly right-of-way line, North 36 degrees 27 minutes 35 seconds West, a distance of 883.00 feet to a point;
THENCE, continue along the aforesaid easterly right-of-way line, North 35 degrees 13 minutes 37 seconds West, a distance of 172.15 feet to a point at the intersection of the easterly right-of-way line of Bullard Avenue and the southerly right-of-way line of Interstate Highway 10;
THENCE, turn and go along the aforesaid Southerly right-of-way line, North 12 degrees 32 minutes 24 seconds East, a distance of 123.92 feet to the POINT OF BEGINNING;
THENCE, continue along the aforesaid southerly right-of-way line, North 12 degrees 32 minutes 24 seconds East, a distance of 39.63 feet to a point;
THENCE, turn and continue along the aforesaid southerly right-of-way line, North 36 degrees 27 minutes 35 seconds West, a distance of 18.82 feet to a point;
THENCE, turn and go North 43 degrees 47 minutes 41 seconds East, a distance of 28.84 feet to a point;
THENCE, turn and go South 50 degrees 40 minutes 26 seconds East, a distance of 24.45 feet to a point;
THENCE, turn and go North 53 degrees 32 minutes 25 seconds East, a distance of 83.04 feet to a point;
THENCE, turn and go along a curve to the right, having a radius of 40.00 feet and an arc length of 14.02 feet to a point of tangent;
THENCE, turn and go North 43 degrees 47 minutes 41 seconds East, a distance of 202.94 feet to a point;
THENCE, turn and go North 82 degrees 59 minutes 28 seconds East, a distance of 59.26 feet to a point;
THENCE, turn and go South 36 degrees 27 minutes 35 seconds East, a distance of 548.85 feet to a point;
THENCE, turn and go South 08 degrees 32 minutes 25 seconds West, a distance of 45.25 feet to a point;
THENCE, turn and go South 53 degrees 32 minutes 25 seconds West, a distance of 215.43 feet to a point;
THENCE, turn and go along a curve to the right, having a radius of 25.00 feet, and an arc length of 4.52 feet to a point of tangent;
THENCE, turn and go North 36 degrees 27 minutes 35 seconds West, a distance of 142.60 feet to a point;
THENCE, turn and go North 24 degrees 33 minutes 01 seconds West, a distance of 46.75 feet to a point;
THENCE, turn and go North 36 degrees 27 minutes 35 seconds West, a distance of 58.60 feet to a point;
THENCE, turn and go North 43 degrees 38 minutes 32 seconds West, a distance of 77.16 feet to a point;
THENCE, turn and go North 36 degrees 27 minutes 35 seconds West, a distance of 156.25 feet to a point of curve;
THENCE, turn and go along a curve to the right, having a radius of 64.50 feet, and an arc length of 35.01 feet to a point of tangent;
L fiTHENCE, turn and go South 84 degrees 38 minutes 37 seconds West, a distance of 52.92 feet to a point;
THENCE, turn and go South 53 degrees 32 minutes 25 seconds West, a distance of *1238 128.23 feet to a point on the southerly right-of-way line of Interstate Highway 10, said point being the POINT OF BEGINNING.
The above described portion of ground contains 150,331.34 square feet or 3.451 acres. And in accordance with a plan of survey by R.P. Fontcuberta Jr., Registered Professional Land Surveyor, dated November 30, 1993, revised May 13, 1994, the aforesaid lot is shown to have same designation, location and measurements and is shown to be a Lease Area for Circuit City.
Description of White’s “supermarket parcel”: LOT 3C-4-1
SECTION 26, LAKRATT TRACT THIRD DISTRICT ORLEANS PARISH, LA
Commence at the intersection of the projection of the Easterly Right-of-Way line of Bullard Avenue and the Northerly Right-of-Way line of Levy Drive (formerly Eastover Blvd.); measure thence along said Northerly Right-of-Way line N 53'32'25" E, a distance of 519.00 feet to the Point of Beginning, measure then from the Point of Beginning N 36'27'35" W, a distance of 606.17 feet; thence N 53'32'25" E, a distance of 453.10 feet thence S 36'27'35" E a distance of 0.67 feet to a point, thence N 53'32'25" E a distance of 61.95 feet to a point, thence S 36'27'35" E a distance of 13.80 feet to a point, thence N 53'32'25" E a distance of 140.42 feet to a point, thence N 36'27'35" W a distance of 66.30 feet to a point, thence N 53'32'25" E a distance of 85.12 feet to a point on the Westerly boundary line of Jahncke Canal; thence along said Westerly line S 36'27'35" E a distance of 658.00 feet to a point on the Northerly boundary line of Levy Drive (formerly Eastover Blvd.); thence along said Northerly line S 53'32'25" W a distance of 740.59 feet to the Point of Beginning and contains 10.237 Acres. All in accordance with a plan of survey by R.P. Fontcuberta, Jr., Registered Professional Land Surveyor, dated April 9, 1987, Revised April 22,1987.

. Because White is the only entity able to enforce the building restriction challenged here, the Trust need sue only White to have the building restriction declared terminated. Cf La. C.C.P. Art. 641.

. See Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981) for guidelines on granting supervisory relief: the trial court's ruling is arguably incorrect, a reversal will terminate the litigation, and there is no dispute of fact to be resolved, then the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits.

. Even if the Supermarket Owner reopens a grocery store, the Supermarket Parcel will not reacquire the right to prevent the other lots from selling groceries. See Suskind v. Shervington, 03-0037, p. 6 (La.App. 4 Cir. 4/16/03), 846 So.2d 93, 97 writ denied 03-1376 (La.9/19/03), 853 So.2d 644 (The resolu-tory condition in an agreement to purchase could not be revived once the condition extinguished the contract).