PAUL A. BONIN, Judge.
liThe trial court dismissed the lawsuit of Hattie J. Hunter, the surviving spouse of Ivory Hunter, Sr., as abandoned due to the failure of any parties in the lawsuit to take any step in its prosecution or defense in the trial court for a period of three years.[1] Mrs. Hunter filed a motion to set aside the dismissal, which motion the trial court denied. Solely arguing that the activity in a different action, a pending class action suit, prevented abandonment in this case, Mrs. Hunter appeals the dismissal of the lawsuit and the denial of her motion.
After a de novo review of the trial court decisions, we conclude that there was no qualifying activity in this action within a three-year period preceding the defendants’ motions to dismiss for abandonment.[2] Accordingly, we affirm the judgment of dismissal without prejudice and the denial of the motion to set aside the judgment. And we decline to express any view on whether the pending class faction would toll the prescriptive period for any lawsuit which Mrs. Hunter may file subsequently.[3]
We explain our reasoning in more detail below.
I
Before addressing Mrs. Hunter’s sole assignment of error, we provide some background facts and discuss this matter’s *1258 procedural history. Ivory Hunter, Sr., and Hattie Hunter filed the present lawsuit on December 4, 2002, seeking damages for medical expenses, physical pain and suffering, mental anxiety, and loss of consortium arising out of Mr. Hunter’s lifelong tobacco use. Mr. Hunter died the day after suit was filed.[4] On January 7, 2003, defendants R.J. Reynolds, Brown & Williamson, Philip Morris Incorporated, and Lorillard removed the matter to federal district court. The matter was remanded back to state court pursuant to an order dated September 8, 2003. Following remand, the defendants filed answers to Mrs. Hunter’s petition and the parties conducted limited written discovery. On September 28, 2004, counsel for R.J. Reynolds responded to Mrs. Hunter’s request for production of documents by forwarding copies of certain of Mr. Hunter’s employment records. After this exchange, no other steps in the prosecution or defense of this matter took place until Mrs. Hunter filed a motion for status conference on January 7, 2011.
Citing to La. C.C.P. art. 561, defendants R.J. Reynolds, Brown & Williamson, Philip Morris USA Inc.; Lorillard, Quaglino, Imperial, Groetsch, and Walgreens filed a joint motion for abandonment on February 8, 2011. Defendant |sLiggett filed a similar motion on February 9, 2011. The trial court signed two corresponding orders of dismissal on, respectively, February 10 and 11, 2011.
Mrs. Hunter timely filed her motion to set aside dismissal on March 17, 2011. See La. C.C.P. art. 5612 A(4). Mrs. Hunter did not contend that one of the parties to this action took a step in the three years prior to January 7, 2011, which served to prevent the running of prescription. Mrs. Hunter, instead, argued that the trial court erred when it dismissed her case for abandonment because activity taken in Scott v. American Tobacco Co., Inc., prevented abandonment in the present case. See Scott v. American Tobacco Co., Inc., 04-2095 (La.App. 4 Cir. 2/7/07), 949 So.2d 1266; and Scott v. American Tobacco Co., Inc., 09-0461 (La.App. 4 Cir. 4/23/10), 36 So.3d 1046. The defendants filed opposition memoranda, and the parties argued the merits of the plaintiffs motion on May 5, 2011. The trial court denied Mrs. Hunter’s motion from the bench and signed a judgment to that effect on June 7, 2011. Mrs. Hunter timely filed her petition for appeal on August 8, 2011. See La. C.C.P. art. 5612 A(5).
II
In this Part, we discuss generally the law governing abandonment motions and the appropriate standard governing our review.
Whether an action has been abandoned is a question of law; thus, the standard of review of the appellate court is simply to determine whether the lower court’s interpretive decision is correct. Meyers ex rel. Meyers v. City of New Orleans, 05-1142, p. 2 (La.App. 4 Cir. 5/17/06), 932 So.2d 719, 721. The | procedure governing abandonment motions is set out in La. C.C.P. art. 561, which reads, in pertinent part:
A. (1) An action, except as provided in Subparagraph (2) of this Paragraph, is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years ...
*1259 (3) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. The sheriff shall serve the order in the manner provided in Article 1314, and shall execute a return pursuant to Article 1292 ...
B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.
The Louisiana Supreme Court has construed Article 561 as imposing three requirements on a plaintiff to avoid an abatement of her action: 1) a party must take some “step” in the prosecution or defense of the action; 2) the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit; and 3) the step must be taken -within three years of the last step taken by either party; sufficient action by either plaintiff or defendant will be deemed a step. Louisiana Dept. of Transp. and Development v. Oilfield Heavy Haulers, L.L.C., 11-0912 (La.12/6/11), 79 So.3d 978, 981. See also Meyers ex rel. Meyers v. City of New Orleans, 05-1142, p. 3 (La.App. 4 Cir. 5/17/06), 932 So.2d 719, 721. A “civil action is a demand for the enforcement of a legal right.” La. C.C. art. 421. A civil action “is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction.” Id. Similarly, a personal action |sis “one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess.” La. C.C.P. art. 422.
A step in the prosecution or defense of an action occurs whenever a party takes a formal action that is intended to hasten the matter to judgment. Whitney Nat. Bank v. Goldsmith, 04-0707 (La.App. 4 Cir. 6/22/05), 913 So.2d 124. As this Court observed, a step in the prosecution must, if it is to prevent abandonment, “be before the court and must appear in the record.” Hargis v. Jefferson Parish, 99-0971, p. 3, (La.App. 4 Cir. 12/8/99), 748 So.2d 606, 607. “Before the court” has been held to mean that the step must appear in the court record. Chevron v. Traigle, 436 So.2d 530, 532 (La.1983).
The jurisprudence has recognized two categories of causes outside the record that are permitted to prevent the running of abandonment: 1) a plaintiff-oriented exception, based on contra non valentem, that applies when failure to prosecute is caused by circumstances beyond the plaintiffs control; and 2) a defense-oriented exception, based on acknowledgment, that applies when the defendant waives his right to assert abandonment by taking actions inconsistent with an intent to treat the case as abandoned. Clark v. State Farm Mut. Auto. Ins. Co., 00-3010, p. 7 (La.5/15/01), 785 So.2d 779, 784-785.
The jurisprudence has uniformly held that La. C.C.P. art. 561 is to be liberally construed in favor of maintaining a plaintiffs suit. Clark, 00-3010, p. 8, 785 So.2d at 785. That is to say, “abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned.” Id. at 786. It is further recognized that abandonment is not a punitive measure — it is designed to discourage frivolous lawsuits by preventing plaintiffs | (¿rom letting them linger indefinitely. Benjamin-Jenkins v. Lawson, 00-0958, p. 3 (La.App. 4 Cir. 3/7/01), 781 So.2d 893, 895. The abandonment rule impli *1260 cates two competing policies: “The prevention of protracted litigation, filed for purposes of harassment or without serious intent to hasten the claim to judgment, is balanced against the maintenance of an action whenever possible so as to afford an aggrieved party his day in court.” Bibeau v. Forest Manor Nursing Home, 05-0181, p. 3 (La.App. 4 Cir. 8/18/05), 917 So.2d 1123, 1125.
Ill
In this part, we first describe our examination of the record of this action, in light of the foregoing authorities, to illuminate why we conclude that the trial court properly signed the order of dismissal and denied Mrs. Hunter’s motion to set aside. We will then discuss Mrs. Hunter’s argument that activity taken in Scott, supra, prevented abandonment in the present case. Having reviewed the memoranda submitted by the parties, we conclude that any presumed activity in Scott does not serve to prevent abandonment of this action of Mrs. Hunter.
A
As far as the record itself reveals, no party to Mrs. Hunter’s lawsuit took a step in the prosecution or defense of this action between September 28, 2004 and January 7, 2011, a period of more than three years. At the hearing on the motion, Mrs. Hunter made no attempt to demonstrate that any formal discovery was exchanged between the parties during the September 28, 2004 and January 7, 2011 time period, which was not included in the record.[5]
|7At the hearing in the trial court, Mrs. Hunter did not seek to establish a claim for her own non-action arising from a contra non valentem impediment. That is, Mrs. Hunter does not contend that her failure to prosecute her action was caused by circumstances beyond her control. Similarly, at the hearing, Mrs. Hunter did not introduce evidence or even argue that the defendants somehow waived their rights to assert abandonment by taking actions inconsistent with an intent to treat this action as abandoned.
Thus, Mrs. Hunter did not supplement the record of this action by showing that during the relevant three-year period discovery had been conducted outside the record, or that she had been somehow prevented from prosecuting her action, or that the moving defendants (or any of them) had somehow waived their rights to assert abandonment. Consequently, we are compelled to conclude that this action was abandoned due to non-action for a three-year period.
B
In this section, we discuss Mrs. Hunter’s contention as set forth in her single assignment of error. As we understand Mrs. Hunter’s argument, she contends that she (or her late husband) is a member of the class certified in Scott, that prosecutorial and defensive activity was ongoing in the Scott action during the three-year period of dormancy in this action, and that consequently a liberal construction of Article 561 would result in finding that she had not shown any intent to abandon this action.[6] Importantly, Mrs. *1261 Hunter neither contends nor suggests that the defendants took any action in Scott which prevented her from staking any steps to prosecute this matter or which constitute a waiver to raise in abandonment in this action.
Without citing to it (or to any specific authority), Mrs. Hunter’s argument appears premised upon an application of the prescriptive rule of La. C.C.P. art. 596 to the issue of abandonment. “Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein.” La. C.C.P. art. 596 A. See also Taranto v. Louisiana Citizens Property Ins. Co., 10-105 (La.3/15/11), 62 So.3d 721. Thus, Mrs. Hunter appears to be arguing that we recognize (and announce) an additional jurisprudential exception in order to avoid a finding of abandonment of this action.
The Scott suit was filed on May 24,1996. 04-2095, p. 1, 949 So.2d at 1271. The Scott class was certified on April 16, 1997. Id. Notice of the Scott class was published on February 24, 2000. Mr. Hunter died on December 5, 2002, one day after filing the present suit.[7] At no time were the two lawsuits consolidated. See La. C.C.P. art. 1561.
While liberative prescription and abandonment are closely related concepts, the suspension principle set out in La. C.C.P. art. 596 cannot be used to prevent the running of abandonment because Article 596 addresses the timely institution of lawsuits, while abandonment concerns the timely prosecution of discrete actions. “Abandonment is both historically and theoretically a form of liberative prescription that exists independent from the prescription that governs the underlying substantive claim.” Clark, 00-3010, p. 10, 785 So.2d at 787.
|flLiberative prescription is a mode of barring of actions as a result of inaction for a period of time. La. C.C. art. 3447. On the one hand, the type of liberative prescription described in La. C.C.P. art. 596, and by inference La. C.C. arts. 3469 (Suspension of Prescription), 3472 (Effect of Suspension), and 3492 (Delictual Actions) refers generally to the mode of extinguishing a legal claim that has not been filed by an obligor during a time period stipulated by law. LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, 1228. See also La. C.C. art. 3447; and G. Baudier-Laeantinerie & A. Tissier, Traite Theorique et Pratique de Droit Civil, No. 25 (4th ed.1924), reprinted in 5 Civil Law Translations at 15 (La. St. Law Inst. Trans.1972).
On the other hand, the concept of abandonment, as clearly delineated in its governing article and the foregoing authorities, applies solely to discrete actions that have already been instituted. Mrs. Hunter’s action is separate and discrete from the Scott action. Neither Mrs. Hunter, nor the late Mr. Hunter, were named class members in Scott, made an appearance in Scott, or consolidated the present suit with Scott. There can be no question but that Mrs. Hunter’s action and Scott are separate and discrete actions. Thus, the steps taken in the prosecution or defense of Scott cannot serve to prevent the abandonment of Mrs. Hunter’s action.
We cannot and do not infer an intent on Mrs. Hunter’s behalf to prosecute this action from steps taken by the parties in *1262 Scott, an action separate from this one. We conclude that even if the pendency of the Scott action may serve to suspend li-berative prescription accruing on Mrs. Hunter’s claims against these or any of these defendants,[8] because the Scott action is a separate and discrete action from | l()this action, the activity in the Scott action cannot be imputed to or imported into this action in order to prevent abandonment of this action.
And, as addressed in the preceding section, because of the extended period of inactivity in this action, the defendants must be relieved of defending this action. See Young v. Laborele, 576 So.2d 551, 552 (La.App. 4th Cir.1991).
CONCLUSION
Finding no reversible error, we affirm the judgments of the trial court that ordered dismissal and denied Mrs. Hunter’s motion to set aside the dismissal. We have examined Mrs. Hunter’s assignment of error and hold that any activity taken in Scott v. American Tobacco Co., Inc. cannot prevent abandonment in the present case.
DECREE
The judgments of the district court that recognized dismissal without prejudice and denied Mrs. Hunter’s motion to set aside dismissal are affirmed. Each party to bear its own costs on appeal. See La. C.C.P. art. 2164.
AFFIRMED

. The dismissal of a lawsuit as abandoned is "without prejudice.” See La. C.C.P. art. 1673; Tasch, Inc. v. Horizon Group, 08-0635, p. 4 (La.App. 4 Cir. 1/7/09), 3 So.3d 562, 565; and DeSalvo v. Waguespack, 187 So.2d 489, 490-491 (La.App. 4th Cir. 1966).

. The Hunters named the following entities as defendants: R.J. Reynolds Tobacco Co.; Brown & Williamson Tobacco Corporation, individually and as successor by merger to the American Tobacco Co.; Philip Morris, Inc.; Philip Morris Companies, Inc.; Lorillard Tobacco Co.; Liggett Group, Inc.; Quaglino Tobacco and Candy Co.; Imperial Trading Co., Inc.; George W. Groetsch, Inc.; Walgreen Louisiana Co., Inc., d/b/a Walgreen Drug Stores; and Whitney Foods, Inc., d/b/a Whitney Food Store.

. The jurisprudence provides that courts should not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. Schwegmann Family Trust No. 2 v. White III, LLC, 11-0611, p. 13 (La.App. 4 Cir. 9/30/11), 76 So.3d 1228, 1236.

. Mrs. Hunter has not amended her petition to add wrongful death or survival claims. See La. C.C. art.’s 2315.1 and 2315.2. Similarly, no other surviving heirs, as identified in identified in the foregoing articles, have intervened to assert wrongful death claims. Likewise, no motion to substitute parties has been filed. See La. C.C.P. art. 801.

. Likewise, Mrs. Hunter made no effort to show that the parties scheduled any discovery conferences between September 28, 2004 and January 7, 2011, which would not have been in the record. See Louisiana Dept. of Transp. and Development v. Oilfield Heavy Haulers, L.L.C., 11-0912 (La. 12/6/11), 79 So.3d 978.

. The defendants argue to the contrary that Mrs. Hunter’s claims asserted in this action are not covered in the Scott action, especially in the light of Mr. Hunter’s death. They also argue that not all defendants in this action remained parties throughout the Scott litigation.

. The defendants point out that this action would constitute an "opt-out” from Scott under the recent three-judge panel decision in Duckworth v. La. Farm Bureau Mut. Ins. Co., 11-0837 (La.App. 4 Cir. 11/23/11), 78 So.3d 835, writ granted, 2011-C-2835 (La.3/30/12), 85 So.3d 99, and thus would lose the tolling benefits of the class action.

. This is a matter which, as we noted in the introduction, ante, we expressly refuse to reach.